## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-------------------------------------------------------------x

ANNA OSETEK :  CASE ACTION NO.
    *Plaintiff* :
     :
     :
v. :
     :
     :
VORTEX SYSTEMS, LLC and :
THOMAS WILKINSON :
    *Defendants* :  SEPTEMBER 27, 2012

-------------------------------------------------------------x

### COMPLAINT

### INTRODUCTION

1.    This is action to redress sexual harassment, sex/gender discrimination, retaliation and wrongful termination of employment in violation of Title VII of the Civil Rights Act of 1964 (U.S.C. § 2000e *et seq.*), as amended, the laws of the State of Connecticut enumerated in Connecticut General Statutes § 46a-60(a)(1)(4) and (8), and the common laws of the State of Connecticut.

### PARTIES AND JURISDICTION

2.    The plaintiff, Anna Osetek (hereinafter referred to as "the plaintiff"), was and is a resident of the town of West Springfield, Massachusetts.

3.    The defendant, Vortex Systems, LLC (hereinafter referred to as "Defendant" or "Defendant Company"), was and is a corporation organized under the laws of the State of Connecticut with a principal place of business at 670 East St. South, Suffield, Connecticut.

4.    The defendant, Thomas Wilkinson (hereinafter referred to as "Mr. Wilkinson"), was and is a resident of the town of Suffield, Connecticut.

5.    The defendant Mr. Wilkison was at times relevant to this complaint and remains the President/Managing Member of Defendant Vortex.  Mr. Wilkinson was an executive agent of the

defendant company and his actions are to be construed as the actions of the defendant company through the doctrine of respondent superior.

6.     Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §1331, federal question jurisdiction, as the plaintiff's claims arise, *inter alia*, under the laws of the United States, namely, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*, as amended.

7.     The plaintiff has exhausted her administrative remedies. The plaintiff filed a timely complaint with the Connecticut Commission on Human Rights and Opportunities (CCHRO), as well as the Equal Employment Opportunities Commission (EEOC) on or about June 19, 2012.

8.     The plaintiff received a right to sue from the EEOC on September 20, 2012, and said notice is appended to this complaint as "Exhibit A." This action is brought within 90 days of the right to sue notice.

9.     The plaintiff received a release of jurisdiction from the CHRO on September 12, 2012, and said notice is appended to this complaint as "Exhibit B." This action is brought within 90 days of the release of jurisdiction.

**FACTS:**

10.     Vortex Systems is a subcontractor for Hamilton Sundstrand.  Mr. Wilkinson, on behalf of Vortex, performs work at the direction Hamilton Sundstrand.  Vortex has offices and workspace in Hamilton's place of business in Windsor Locks, Connecticut.

11.     Upon information and belief Hamilton hired Vortex on a contractual basis for the purposes of providing electrical work for Hamilton.  Hamilton employees had authority over the plaintiff and her work duties, and interacted with the plaintiff and her work assignments.

12.     Mr. Jessie Goyette was a mechanical engineer for Vortex.  The actions of Mr. Goyette are to be construed the actions of Defendant Vortex through the doctrine of respondent superior.

2

13.     Plaintiff commenced her employment with Vortex on July 5, 2011.  Plaintiff was hired to be the Office Manager.  Plaintiff worked for Defendant Company in that capacity until the unlawful and wrongful termination of her employment on February 6, 2012.

14.     At the time of the plaintiff's interview, Mr. Wilkinson instructed plaintiff that her job duties as the office manager were administrative, including but not limited to ordering parts, organizing the library of parts, filing, office administrative work, preparing the employee handbook/reference book, preparing a business plan for the company, and paperwork for the day to day operations of the business.

15.     During the job interview Plaintiff was informed by Mr. Wilkinson that she was overqualified for the position, but that he was going to hire plaintiff anyway because she would be good for his business.

16.     Upon the commencement of plaintiff's employment with Vortex, plaintiff was subjected to severe and pervasive sexual harassment and an extremely hostile work environment at the hands of Mr. Wilkinson.

17.     Vortex has a home office in Suffield, Connecticut, and it also has offices at Hamilton Sundstrand.  Within the first week or two of starting her employment, Mr. Wilkinson and Hamilton employees made comments about the plaintiff's appearance and looks.

18.     Mr. Wilkerson approached the plaintiff and told her that Hamilton employees were commenting that she was pretty and praised him for hiring the plaintiff.  Hamilton employees told Mr. Wilkerson that he should do all the hiring for both companies because of the women he hires.

19.     Mr. Wilkinson stated to the plaintiff: "you are attractive, I'll give you that, but not the hottest, maybe top 5."

3

20.    Thereafter, during the early part of plaintiff's employment while at the Hamilton offices, Mr. Wilkinson instructed plaintiff to walk around the offices and desks and speak with the Hamilton employees, which were predominantly men. He required that plaintiff just walk around the factory and socialize with the men so that she could represent the defendant company and impress the men. Thereafter, Hamilton employees reported to Mr. Wilkerson and spoke about the plaintiff, giving praise to Mr. Wilkerson for hiring plaintiff and instructing him to have her walk around.

21.    Mr. Wilkinson took dance lessons outside of work. The next day after a dance lesson Mr. Wilkinson came to work and talked to the plaintiff about how sexual the dance class was and how he enjoyed the class because when he danced he could feel the instructor's private parts rubbing against his leg and groin during the lesson, and the female instructor's body against his.

22.    Mr. Wilkinson told the plaintiff that it was a very sexual experience and at the end of his description Mr. Wilkinson asked the plaintiff if she wanted to join him next time in dance class. Whenever plaintiff was asked, plaintiff always stated to Mr. Wilkinson that she was married and that she was not interested in dancing with him. Although plaintiff denied his requests, Mr. Wilkinson continued to make sexual advancements towards the plaintiff.

23.    Mr. Wilkinson made the working environment very uncomfortable in the way that he spoke to the plaintiff. He often talked to the plaintiff in the course of employment about how he was almost on the sex offender's website and that he was popular on the internet because he was charged and investigated for sexually molesting children. When Mr. Wilkinson spoke of his prior charges and told plaintiff some of the facts surrounding the charges, it made the plaintiff extremely uncomfortable.

24.    Early in plaintiff's employment, Mr. Wilkinson instructed plaintiff to perform electrical work similar to work done by an electrical engineer or electrician, including but not limited to making cables for wiring and soldering and wiring hardware for testing aircraft parts.

4

25.    Plaintiff had absolutely no experience with electrical work and was not qualified to perform said work.  Plaintiff complained to Mr. Wilkinson that not only was this not part of her job duties, but more importantly, that plaintiff was not qualified to perform such work.  Plaintiff complained that this practice, and even a small error, could endanger people.

26.    Despite plaintiff's complaints and despite Mr. Wilkinson being fully aware that Plaintiff was hired as an office manager and had no experience performing electrical work or conducting testing on aircraft parts, he insisted that plaintiff perform the electrical work.

27.    Mr. Wilkinson asked plaintiff on multiple occasions to take trips with him or go on personal vacations with him.  For example, Mr. Wilkinson asked plaintiff to join him on a trip to Las Vegas to vacation together.  Another example is when he asked Plaintiff to join him in Hawaii.

28.    On that occasion, Mr. Wilkinson asked the Plaintiff: "name a place anywhere in the world you would want to go on vacation?"  Plaintiff stated that in the past she had been to Hawaii with her husband and that it was phenomenal.  In response, Mr. Wilkinson stated:  "ok, let go together just me and you, we can say that it is business."  Plaintiff denied all requests to vacation with Mr. Wilkinson and reminded him that she was married.

29.    Mr. Wilkinson also asked the plaintiff to go out to dinner with him after work.  Again, Plaintiff denied his requests and stated that she had to go home after work to be with her husband.

30.    In November 2011, Mr. Wilkinson approached the plaintiff while she was working with Mr. Goyette.  Mr. Wilkinson handed both plaintiff and Mr. Goyette rulers.  After being handed the ruler Plaintiff asked what it was for.  Mr. Wilkinson's response was to measure things.  When plaintiff asked like what?  Wilkinson responded: "you know what" gesturing to his private area while he laughed.

31.     On another occasion in November 2011, Mr. Wilkinson and the plaintiff took a ride in Wilkinson's car to see the new office building that Defendant Company was moving to.  It was just the two of them in the car.  While Mr. Wilkinson was driving with his left hand on the steering wheel, he took his right hand and brushed the plaintiff's hair along the side and back of her head and stated: "you are so attractive."  Plaintiff was freighted by this and leaned away not knowing how to respond.

32.     Mr. Wilkinson also bought the plaintiff gifts of a sexual nature.  For example, Wilkinson purchased plaintiff chocolates and inappropriate Lingerie.

33.     Mr. Wilkinson also took plaintiff to lunch during business hours.  Wilkinson referred to the lunches as "Vortex Lunches" where they would go out to eat just the two of them.  During the lunch Wilkinson often drank alcohol and pushed alcohol on the plaintiff.  Wilkinson made sexual advances towards the plaintiff and on each occasion plaintiff told Wilkinson that she was not interested and to stop.

34.     Also, during the Vortex lunches, Mr. Wilkinson talked negatively to the plaintiff about her husband and her marriage to try and convince plaintiff to be with him.  Mr. Wilkinson asked plaintiff why she was married to a plumber and stated that she should be married to an engineer like him because plaintiff would have more financial freedom and not have to work and be able to do more things socially with friends.  Wilkinson would refer to the plaintiff as a "plumber's wife" and told plaintiff that if she were with Mr. Wilkinson, that she would be a "trophy wife."

35.     By Christmas 2011, Plaintiff no longer agreed to attend lunches with Mr. Wilkinson because of how uncomfortable he made plaintiff feel.  This upset Mr. Wilkinson.

36.     On or about December 2011, while working at the Suffield office plaintiff placed moisturizing lotion on her hands because her hands were dry from performing electrical work with cables.  Mr. Wilkinson approached the plaintiff, took her hands in his hands and stated that plaintiff's

hands looked bad and they needed to be rubbed. Mr. Wilkinson held plaintiff's hands and massaged the moisturizer into her hands. Plaintiff pulled her hands away as it made her extremely uncomfortable.

37.     On another occasion, while at work and in front of other employees, Mr. Wilkinson was ordering company shirts and asked everyone their sizes. Plaintiff stated that she wears a size 2. Mr. Wilkinson asked the plaintiff what size she was wearing at that moment. In response Plaintiff stated a size 2. Mr. Wilkinson responded: "you probably need a size 4 then because your girls are too tight in that one."

38.     One day in December 2011, plaintiff wore a fitted sweater to work. Mr. Wilkinson approached the plaintiff and stated that all of the men at Hamilton were talking about plaintiff's breasts. He stated to the plaintiff: "I can see your breasts right now." Plaintiff responded "no, you can't, it is a sweater." In response Wilkinson stated: "I can see the shape and roundness of them, it leaves little to imagination." Plaintiff immediately began to cry and get emotional. Mr. Wilkinson left plaintiff there crying and did not say another word. Mr. Goyette thereafter approached plaintiff and asked if she was ok.

39.     In late December 2011 or early January 2012, Mr. Wilkinson approached plaintiff and stated that she had to go to Puerto Rico with him and two other employees for a business trip to do work at the Hamilton facility. Another woman named Ekta Ghandi, a Hamilton employee, also attended the trip. They attended the business trip to Puerto Rico from January 5, 2012 through January 13, 2012.

40.     During the trip Mr. Wilkinson was extremely sexual and made sexual advancements to both the plaintiff and Ekta. Wilkinson commented about how much money he had and that he wanted

to make plaintiff and Ekta's lives better.  On one occasion, in plaintiff's presence, Mr. Wilkinson

stated to Ekta that he would love to kiss her lips.

41.     At one point during the trip, plaintiff felt that there was not much work for her to do

and she began to wonder why Mr. Wilkinson asked for plaintiff to attend the business trip to Puerto

Rico. Plaintiff approached Mr. Wilkinson and asked whether there were any assignments for her to do

because she felt bored and asked why she was there.  Mr. Wilkinson stated to the plaintiff: "just do

nothing, I like having you here because it is fun to travel with someone."

42.     At the end of the week plaintiff was scheduled to leave Puerto Rico on January 13,

2012.  Mr. Wilkinson approached plaintiff and asked for her to stay the weekend with him in his room.

Mr. Wilkinson stated that he only has one room, that plaintiff can sleep in the same bed as him but that

if plaintiff was uncomfortable they could put pillows between them.  Plaintiff told Wilkinson no and

that she wanted to go home and be with her husband.

43.     On or about January 16 or 17, 2012, immediately after returning from Puerto, plaintiff

approached Mr. Wilkinson and asked to have a meeting with him in the conference room.  Plaintiff

explained to Mr. Wilkinson that she felt his treatment towards her has been improper and that she was

not being respected as an employee or taken seriously.  Plaintiff stated that she felt his treatment was

inappropriate.  Plaintiff stated that the manner in which he treated her in Puerto Rico and asking her to

sleep in the same bed with him was unprofessional and Plaintiff requested that they maintain a

professional business relationship.

44.     In response Mr. Wilkinson stated that he understood plaintiff's concerns and

represented that the working environment would remain professional.

45.     Approximately one week later plaintiff was approached by Mr. Goyette and for the first

time in plaintiff's employment she was given a written warning for wiring a cable incorrectly.  The

error was because plaintiff misread an electrical engineering blueprint of the cable. Plaintiff

apologized to Mr. Goyette but told him that she has no experience with electrical blueprints and wiring

cable, that she was not an electrician, and that she was hired to be the office manager, not an

electrician.

46.     Shortly thereafter, on or about February 3, 2012, Mr. Wilkinson approached plaintiff at

work, told her that he was a big Patriots fan, and he asked if plaintiff wanted to go to Indianapolis and

go to the super bowl with him.  Plaintiff respectfully declined and stated that she wanted to stay home

and watch the game with her husband. Mr. Wilkinson became upset at the plaintiff that she denied his

request. Mr. Goyette was present for this conversation.

47.     The next Monday, February 6, 2012, Mr. Wilkinson approached plaintiff around

11:45am at the Hamilton office and told plaintiff that in Building 2 he noticed 6 cables that were wired

and soldered incorrectly.  Plaintiff stated that these 6 cables were some of the first that she had done

but that she had no official training.  Plaintiff stated that she was learning and getting better over time.

Plaintiff also reminded Mr. Wilkinson that she was hired to be the office manager.

48.     In response Mr. Wilkinson instructed plaintiff that her employment was terminated.

Plaintiff asked why and Wilkinson's response was that plaintiff makes too many mistakes in wiring

and cable, and that she was hard to work with.  Plaintiff asked what he meant about hard to work with,

and his response was: "you don't socialize and talk with me."  Plaintiff tried to explain to Mr.

Wilkinson that she goes to work to perform her job, not to socialize.  Mr. Wilkinson did not wish to

talk about it further and instructed plaintiff that her employment was terminated.

**COUNT ONE:**          Sex / Gender Discrimination in Violation of Title VII and Conn.
                        Gen. Stat. § 46a-60(a)(1) - (VORTEX, LLC)

1.      Paragraphs 1 through 48 inclusive above, are hereby incorporated and made paragraphs
1 through 48 of this First Count as if fully stated herein.

49.     The foregoing conduct of defendant Vortex, through its agents, servants, and/or
employees, constitutes discrimination against the plaintiff because of her sex/gender, is a violation of
Title VII and CGS § 46a-60(a)(1).

50.     As a result of the aforementioned conduct of the defendant Vortex, its agents, servants
and/or employees, the plaintiff has lost a considerable amount of time from her gainful employment,
and she has suffered a substantial loss of income, health benefits, and retirement benefits, and will
continue to suffer the loss of same into the future all to her loss and detriment.

51.     As a further result of the aforementioned conduct of the defendant Vortex, through its
agents, servants and/or employees, the plaintiff has suffered and will continue to suffer in the future,
considerable emotional and psychological pain and suffering.

52.     As a further result of the aforementioned conduct of the defendant Vortex, its agents,
servants and/or employees, the plaintiff has been forced to incur attorney's fees and costs in order to
obtain the rights to which she is entitled.

**COUNT TWO:**          Sexual Harassment in Violation of Title VII and Conn. Gen. Stat.
                        46a-60(a)(8) - (VORTEX, LLC)

1.      The Plaintiff repeats and re-alleges paragraphs 1 through 48 above, and incorporates
them as paragraphs 1 through 48 of this Second Count as if fully stated herein.

49.     Defendant, acting by and through its agents/servants/employees, subjected Plaintiff to
unwelcome sexual advances, requests for sexual favors, and other conduct of a sexual nature.

50.     Plaintiff's rejection of such conduct and failure to submit to such conduct was

10

thereafter used as the basis for employment decisions affecting the Plaintiff.

51.     The foregoing conduct of the Defendant Company constitutes unlawful "Quid Pro Quo" sexual harassment in violation Title VII and the Connecticut Fair Employment Practices Act.

52.     As a result of the foregoing unlawful conduct of the Defendant Company Plaintiff has suffered, and will continue to suffer, lost wages and fringe benefits, as well as other consequential losses and damages.

53.     As a further result of the foregoing unlawful conduct of the Defendant Company, the Plaintiff has expended attorney's fees and costs in order to secure the right to which she is entitled.

54.     As a further result of the foregoing unlawful conduct of the Defendant Company, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT THREE:**          **Hostile Work Environment in Violation of Title VII and Conn. Gen. Stat. 46a-60(a)(8) - (VORTEX, LLC)**

1.      The Plaintiff repeats and re-alleges paragraphs 1 through 48 above, and incorporates them as paragraphs 1 through 48 of this Third Count as if fully stated herein.

49.     Defendant, by and through the aforementioned actions of its agents / servants / and / or employees, subjected Plaintiff to a hostile work environment.

50.     As a result of the foregoing unlawful conduct of the Defendant Company Plaintiff has suffered, and will continue to suffer, lost wages and fringe benefits, as well as other consequential losses and damages.

51.     As a further result of the foregoing unlawful conduct of the Defendant Company, the Plaintiff has expended attorney's fees and costs in order to secure the right to which she is entitled.

52.     As a further result of conduct of the Defendant Company, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT FOUR:**           **Retaliation in Violation of Title VII and Conn. Gen. Stat. 46a-60(a)(4) - (VORTEX, LLC)**

1.      The Plaintiff repeats and re-alleges paragraphs 1 through 48 above, and incorporates them as paragraphs 1 through 48 of this Fourth Count as if fully stated herein.

49.      Defendant retaliated against the Plaintiff for opposing the aforementioned unlawful and discriminatory conduct of Defendant's agents/servants/employees by, *inter alia*, subjecting her to further harassment, adverse employment actions, and ultimately terminating her employment.

50.      As a result of the foregoing unlawful conduct of the Defendant Company Plaintiff has suffered, and will continue to suffer, lost wages and fringe benefits, as well as other consequential losses and damages.

51.      As a further result of the foregoing unlawful conduct of the Defendant Company, the Plaintiff has expended attorney's fees and costs in order to secure the right to which she is entitled.

52.      As a further result of the foregoing unlawful conduct of the Defendant Company, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT FIVE:**      **Intentional Infliction of Emotional Distress - (VORTEX, LLC)**

1.      Paragraphs 1 through 48, inclusive above, are hereby incorporated and made paragraphs 1 through 48 of this Fifth Count as if fully stated herein.

49.      The foregoing conduct of the defendant Vortex, through its agents, servants, and/or employees, was extreme and outrageous.

50.      The defendant, through its agents, servants, and/or employees, intended to inflict emotional distress upon the plaintiff and knew, or in the exercise of reasonable care, should have known, that emotional distress was the likely result of the aforementioned conduct.

12

51.     As a result of the aforementioned conduct of defendant, through its agents, servants, and/or employees, the plaintiff has suffered severe emotional distress and loss of income.

52.     As a further result of the aforementioned conduct of defendant, through its agents, servants, and/or employees, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

53.     As a further result of the aforementioned conduct of the defendant, through its agents, servants, and/or employees, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT SIX:**          **Intentional Infliction of Emotional Distress – Thomas Wilkinson**

1.     Paragraphs 1 through 48, inclusive above, are hereby incorporated and made paragraphs 1 through 48 of this Sixth Count as if fully stated herein.

52.     The foregoing conduct of the defendant was extreme and outrageous.

53.     The defendant intended to inflict emotional distress upon the plaintiff and knew, or in the exercise of reasonable care, should have known, that emotional distress was the likely result of the aforementioned conduct.

54.     As a result of the aforementioned conduct of defendant, the plaintiff has suffered severe emotional distress and loss of income.

55.     As a further result of the aforementioned conduct of defendant, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

56.     As a further result of the aforementioned conduct of the defendant, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT SEVEN:**                **Sexual Harassment in Violation of Title VII and Conn. Gen. Stat. 46a-60(a)(8) - (Thomas Wilkinson)**

1.       The Plaintiff repeats and re-alleges paragraphs 1 through 48 above, and incorporates them as paragraphs 1 through 48 of this Seventh Count as if fully stated herein.

49.      Defendant subjected Plaintiff to unwelcome sexual advances, requests for sexual favors, and other conduct of a sexual nature.

50.      Plaintiff's rejection of such conduct and failure to submit to such conduct was thereafter used as the basis for employment decisions affecting the Plaintiff.

51.      The foregoing conduct of the Defendant constitutes unlawful "Quid Pro Quo" sexual harassment in violation Title VII and the Connecticut Fair Employment Practices Act.

52.      As a result of the foregoing unlawful conduct of the Defendant Plaintiff has suffered, and will continue to suffer, lost wages and fringe benefits, as well as other consequential losses and damages.

53.      As a further result of the foregoing unlawful conduct of the Defendant, the Plaintiff has expended attorney's fees and costs in order to secure the right to which she is entitled.

54.      As a further result of the foregoing unlawful conduct of the Defendant, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT EIGHT:**            **Hostile Work Environment in Violation of Title VII and Conn. Gen. Stat. 46a-60(a)(8) - (Thomas Wilkinson)**

1.       The Plaintiff repeats and re-alleges paragraphs 1 through 48 above, and incorporates them as paragraphs 1 through 48 of this eighth count as if fully stated herein.

49.      Defendant subjected Plaintiff to a hostile work environment.

50.      As a result of the foregoing unlawful conduct of the Defendant, Plaintiff has suffered, and will continue to suffer, lost wages and fringe benefits, as well as other consequential losses and damages.

51.     As a further result of the foregoing unlawful conduct of the Defendant, the Plaintiff has expended attorney's fees and costs in order to secure the right to which she is entitled.

52.     As a further result of the foregoing unlawful conduct of the Defendant, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT NINE:**     **Aiding, abetting, inciting, compelling or coercing discriminatory employment practice in Violation of C.G.S.  46a-60(a)(5) – (Thomas Wilkinson)**

1.     Plaintiff repeats and re-alleges paragraphs 1 through 48 above as paragraphs 1 through 48 of this Ninth Count as if fully set forth herein.

49.     The aforementioned conduct of the defendant constituted aiding, abetting, inciting, compelling or coercing discriminatory employment practice in Violation of C.G.S. § 46a-60(a)(5).

50.     As a result of the aforementioned conduct of the Defendant, Plaintiff has lost a considerable amount of time from her gainful employment, and as such has suffered a substantial amount of income and benefits and she will continue to suffer her loss of same all to her loss and detriment.

51.     As a result of the aforementioned conduct of the Defendant, the Plaintiff has suffered and will continue to suffer in the future considerable emotional psychological pain and suffering.

52.     As a further result of the aforementioned conduct of the Defendant, the Plaintiff has been forced to incur legal fees and costs in order to obtain the rights to which she is entitled.

**WHEREFORE,** the Plaintiff prays for the following relief:

1.  Assume jurisdiction over this matter;

2.  Money damages;

3.  Damages for lost wages, lost benefits, lost fringe benefits, front pay and reinstatement;

4.  Damage for emotional distress;

5.  Punitive damages and double damages;

6.  Reasonable attorneys fee and costs; and

6.  Such other relief as the Court deems appropriate.


THE PLAINTIFF
ANNA OSETEK

By _____
Emanuele R. Cicchiello (ct27118)
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, Connecticut 06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Email: manny@cicchielloesq.com

16

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------x
ANNA OSETEK                                :        CASE ACTION NO.
        Plaintiff                          :
                                           :
                                           :
v.                                         :
                                           :
VORTEX SYSTEMS, LLC and                    :
THOMAS WILKINSON                           :
        Defendants                         :        SEPTEMBER 27, 2012
-----------------------------------------------------------x
```

## REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests trial by jury in the above-captioned matter.

THE PLAINTIFF
ANNA OSETEK

By_____
Emanuele R. Cicchiello (ct27118)
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, Connecticut 06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Email: manny@cicchielloesq.com

17

# EXHIBIT A

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: Anna Osetek<br>24 Greenleaf Avenue<br>West Springfield, MA 01089 | From: Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2012-00691 | Anne R. Giantonio,<br>Intake Supervisor | (617) 565-3189 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Robert L. Sanders,
Area Office Director

September 20, 2012
(Date Mailed)

Enclosures(s)

Vortex Systems
670 East St., South
Suffield, CT 06078

Cicchiello & Cicchiello
364 Franklin Avenue
Hartford, CT 06114

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# <u>EXHIBIT B</u>

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

**Anna Osetek** ____
COMPLAINANT

vs.

CHRO No.  1210317
EEOC No.  16A-2012-00691

**Vortex Systems** ____
RESPONDENT

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint.

The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION   BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

September 12, 2012 ____
DATE

Robert J. Brothers, Jr.
Executive Director

Service:
Complainant's Attorney:  Emanuele Cicchiello, via email:  service@cicchielloesq.com
Respondent's Attorney:  Daniel P. Murphy, via email:  dmurphy@kemlaw.com
Respondent's Contact:  Thomas Wilkinson, via email:  vortex.systems@cox.net